IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-8

| | |
|---|---|
| GLENDA S. EDWARDS, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security )<br>)<br>**Defendant.** )<br>) | **ORDER** |

**BEFORE THE COURT** are cross-motions for summary judgment filed by Glenda S. Edwards ("Edwards" or "Plaintiff") and Carolyn W. Colvin ("Commissioner" or "Defendant"). (Docs. 12, 15). The specific issue before the Court is whether the case of *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337 (4th Cir. 2012) compels reversal or remand of the final decision of the Commissioner.

## I. BACKGROUND OF THE LAW

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge ("ALJ") will issue a decision without proceeding to the next step in

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

1

the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

In addition to the five step process, in the case of period of disability and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §401 *et seq*, the Plaintiff must show that she was disabled prior to her date last insured ("DLI"). *Bird*, 699 F.3d at 341; 20 C.F.R. §§ 404.101, 404.130, 404.131.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. ADMINISTRATIVE HISTORY

On October 13, 2009, Plaintiff filed a DIB application, alleging an inability to do work due to a disabling condition beginning July 18, 2004. The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 103-08, 109-14). Plaintiff then filed a request for a hearing and was granted one presided over by ALJ Theresa R. Jenkins. (Tr. 62-68, 69-102). The ALJ issued an unfavorable decision on November 22, 2011 and the Appeals Council denied review. Therefore, the ALJ's decision became the Commissioner's final decision.

The ALJ found that Plaintiff's DLI was December 31, 2004 and she does not contest this on appeal. (Tr. 17). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity. (*Id.*). At step two, the ALJ found that through the DLI Plaintiff had the following severe impairments: left foot peripheral neuropathy, left knee prolapsed lateral

3

meniscus and left anterior cruciate ligament tears, status post arthroscopic repair with residual effects, as well as obesity. (Tr. 17). At step two, the ALJ found that Plaintiff's lipomyelomeningocele was not a "severe" impairment because of the lack of medical evidence before her DLI. Given that this analysis is the subject of the appeal, the Court shall reproduce it:

> In addition to the claimant's depression . . . her lipomyelomeningocele was not a medically determinable impairment until approximately five years after her insured status expired, since the evidence does not contain objective findings until 2009 (Exhibit 1F, 10F, 11F). The regulations state that the claimant's impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. *See*, 20 CFR 404.1508. No matter how genuine an individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable impairment, the condition cannot be considered a "severe" impairment SSR 96-4p. In this case, although the evidence documents that the claimant apparently underwent a neurosurgical procedure when she was 18 months old, allegedly for a type of spina bifida, the claimant's surgery appeared to have been a success (Exhibit 1F). To illustrate, her earnings record indicates that despite undergoing this surgical correction when she was 18 months old, she was capable of substantial gainful activity for several years (Exhibit 6D). However, although diagnostic, objective, and subjective findings demonstrated that the claimant's lipomyelomeningocele is a "severe" impairment, this evidence was not present prior to the expiration of her last date insured. Interestingly, although the claimant alleges that her debilitating symptoms began on June 18, 2004, she testified and the record substantiates her symptoms including back pain, and left foot neuropathy did not intensify causing her to seek treatment until 2009. Additionally, despite the claimant's alleged onset date, she did not file her Title II application until 2009 a further indication that the claimant's symptoms including pain did not increase or become possibility [*sic*] debilitating until approximately five years after her date last insured.

(Tr. 19). At step three, the ALJ found that through Plaintiff's DLI she did not have an impairment or combination of impairments that met or medically equaled one of the listings. (Tr. 19). Then the ALJ found that she had the RFC to perform "light" work as defined in 20 C.F.R. § 404.1567(b) through her DLI. (Tr. 20). At the fourth step, the ALJ found that she was able to perform her past relevant work as a car jockey. (Tr. 22). The ALJ also proceeded to step five. At step five, the ALJ found that Plaintiff could perform other occupations existing in significant numbers in the national economy through her DLI. (Tr. 22-23). Therefore, the ALJ found that Plaintiff was not disabled through her DLI.

IV. ANALYSIS

Plaintiff argues that the ALJ should have given retrospective consideration to certain medical records. Specifically, Plaintiff argues that the ALJ erred when stating that Plaintiff's "lipomyelomeningocele was not a medically determinable impairment until approximately five years after her insured status expired since the evidence does not contain objective findings until 2009." (Tr. 19).

"Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Evidence created after a claimant's DLI that permits an "inference of linkage" between a claimant's post- and pre-DLI condition "could be the 'most cogent proof' of a claimant's pre-DLI disability." *Id.* (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir.1969)). The underlying rule is that "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with [her] earlier symptoms." *Id.* (quoting *Moore*, 418 F.2d at 1226). However, where there is not

5

sufficient evidence supporting an inference that a claimant's post-DLI assessment is linked to pre-DLI impairments, then the ALJ may properly not give the new assessment retrospective consideration. *Id.* (citing *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (per curiam).[2]

In *Bird*, the claimant did not have any medical records prior to his DLI which was March 31, 2005. *Bird*, 699 F.3d at 340. The first medical records in evidence were from June 2006, which detailed his visit to the Department of Veterans Affairs. *Id.* He was subsequently diagnosed with having Post Traumatic Stress Disorder ("PTSD") by several medical professionals. *Id.* The ALJ found that his impairment was insufficiently severe to qualify for benefits by relying, in part, on the lack of medical evidence created prior to the claimant's DLI. *Id.* Notably, "[t]he ALJ did not make a finding regarding whether Bird was disabled when he applied for Social Security disability benefits or at the time of the hearing." *Id.* The Fourth Circuit ruled that the ALJ should have given retrospective consideration to the post-DLI medical evidence. *Id.* at 341. The Fourth Circuit attached particular importance to the fact that a psychologist's report indicated that his PTSD had been ongoing since he had returned from Vietnam. *Id.* Further, another medical report recounted the current symptoms of PTSD and "placed Bird's symptoms in the context of his work and social histories, drawing a link between his current condition and his condition predating his DLI." *Id.* This evidence was corroborated by Bird and his wife's recount of their experiences with his PTSD symptoms. *Id.* In this type of situation, the Fourth Circuit held that remand was required because it was an error of law to refuse to consider the properly linked post-DLI evidence. *Id.*

The Fourth Circuit also addressed the issue of onset date and SSR No. 83-20.[3] "The onset date of disability is the first date an individual is disabled as defined in the Act and regulations." SSR No. 83-20. SSR No. 83-20 provides that:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits
>
> . . .
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR-83-20. A medical advisor should be consulted "in all but the most plain cases" prior to inferring an onset date. *Bird*, 699 F.3d at 345 (quoting *Bailey v. Chater*, 68 F.3d 75, 79-80 (4th Cir. 1995). The Fourth Circuit cited the Tenth Circuit in cautioning that "when a claimant has established a current disability, '[a]n ALJ may not make negative inferences [concerning the date of onset] from an ambiguous record; rather [the ALJ] must call a medical advisor pursuant to SSR 83-20." *Id.* (quoting *Blea v. Barnhardt*, 466 F.3d 903, 913 (10th Cir. 2006)).

---

[3] Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

The problem in *Bird* was that "the ALJ found that Bird did not prove he had a disabling impairment before his DLI, but [he] did not make a finding regarding whether Bird was ever disabled after his DLI." *Id.* at 345. Therefore, the Court instructed the ALJ, on remand, to "initially . . . review all the evidence in the record to determine whether Bird was disabled at any time." *Id.* If the ALJ determined that the claimant was disabled at any time, and "the medical evidence of the date of onset of that disability was ambiguous such that a retrospective inference to the period before Bird's DLI would be necessary, the ALJ will be required to obtain the assistance of a medical advisor in order to render an informed determination regarding the date of onset." *Id.* at 345.

The Commissioner argues that this case is distinguishable from *Bird* because the ALJ in *Bird* determined the claimant did not establish a severe impairment before his DLI and here the ALJ determined that Plaintiff's lipomyelomeningocele was not "medically determinable" before her DLI. At the outset, the Court notes that the ALJ's finding with regard to lipomyelomeningocele occurred at step two and was preceded by the phrase "[i]n addition to the claimant's depression, anxiety orders, and right ankle sprain being "nonsevere." (Tr. 19). The Commissioner cites to SS-R No. 96-4 for the statement that symptoms alone will not establish a medically determinable impairment and that objective evidence is necessary. (Doc. 16, at 8). The Commissioner proceeds to argue that because the ALJ found that there was not objective evidence of lipomyelomeningocele prior to Plaintiff's DLI, the Court must uphold the ALJ's decision. The Court rejects this argument because it would eviscerate the holding in *Bird*. It is impossible to credit the Commissioner's argument given that Bird himself had no objective evidence of PTSD created prior to his DLI. In fact, this was the primary reason the ALJ found Bird's PTSD to be not severe. *Bird*, 699 F.3d at 340.

The Commissioner next argues that there is no evidence of linkage between Plaintiff's lipomyelomeningocele as diagnosed in 2009 and her pre-DLI condition.

The Court must ascertain what exactly lipomyelomeningocele is in order to understand whether or not there is linkage present. Stedman's Medical Dictionary describes it as "[a]n intraspinal cauda equinal lipoma associated with a spina bifida. STEDMAN'S MED. DICT. Lipomeningocele (27th ed. 2000); *see also Campbell v. Comm'r of Soc. Sec.*, No. 6:13-CV-00026, 2014 WL 4181597, at *2 (W.D. Va. Aug. 21, 2014) (describing as "a fatty tumor located on the spinal cord."). Lipomyelomeningocele is a rare disorder present at birth. (Tr. 377). Symptoms of lipomyelomeningocele include muscle weakness, loss of sensation in the lower legs and feet, incontinence, and back pain. (Tr. 290, 375).

There is evidence in the record supporting the proposition that Plaintiff suffered from lipomyelomeningocele prior to her DLI. For example, Plaintiff has a long history of back pain recounted in the October 6, 2009 diagnosis. (Tr. 288-290). This is corroborated by Plaintiff's testimony at the hearing and some of her medical records. Plaintiff also has a history of falls and has complained of numbness in her legs and toes. (Tr. 301-02); *see also* (Tr. 305, notes dated April 27 and April 29, 1999 indicating that Plaintiff has poor "proprioception in L ankle."). In fact, she was assessed as having "peripheral neuropathy with numbness on the left foot which has been worked up by a neurologist with EMGs and PNCBs and no etiology has been determined" on April 27, 2000. (Tr. 311).[4] The Commissioner does not argue, and the record does not reflect, any traumatic origin to Plaintiff's mass on her back. In fact, the Wake Forest medical records indicate that the lipomyelomeningocele was likely present at birth. (Tr. 290, 337). On May 13, 2002, Plaintiff complained of 'lower stomach/back pain" to Vivian Seal, RN,

---

[4] Plaintiff also has evidence of incontinence in her medical records. However, it appears to be associated with a respiratory issue and only occurred after her DLI. (Tr. 359, 361).

9

CS, FNP. (Tr. 372). This same type of pain was still present after her DLI, on March 7, 2005, where she again visited Dr. Seal (Tr. 367). Plaintiff does not have the dearth of medical records present in *Bird*. However, Plaintiff's medical records are not so persuasive as to rule out the possibility of onset prior to her DLI. They, in fact, support a finding that there likely was a failure to diagnose Plaintiff's rare condition.

Accordingly, there is enough evidence linking Plaintiff's post-DLI condition to her pre-DLI condition. Therefore, the ALJ should have given retrospective consideration to the post-DLI evidence. The Court is convinced that the ALJ, at both step two and when computing Plaintiff's RFC, refused to consider Plaintiff's post-DLI evidence as a basis to prove her disability merely because it was created after her DLI. Therefore, the ALJ committed an error of law requiring remand. On remand, the ALJ must first review all of the evidence in the record to determine whether Edwards was disabled at any time. *Bird*, 699 F.3d at 345. If the ALJ determines that Edwards has established a disability resulting from her lipomyelomeningocele, but that the medical evidence of the date of onset of disability is ambiguous such that a retrospective inference is necessary to determine Edward's pre-DLI condition, then the ALJ will be required to utilize the assistance of a medical advisor in order to render an informed determination regarding the date of onset. *Id.*

**IT IS, THEREFORE, ORDERED THAT**

(1) Plaintiff Glenda E. Edward's Motion for Summary Judgment is **GRANTED** insofar as it seeks remand; it is **DENIED** to the extent it seeks this Court to award benefits;

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment is **DENIED;** and

(3) The case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

Signed: January 8, 2015

Richard L. Voorhees
United States District Judge